UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
       Plaintiff )
)  Cr.# 04-10046-RGS
  v. )
)
ANGEL GONZALEZ )
       Defendant )
_____ )

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT
TO F.R.Cr.P. RULE 32(a)(C) and 18 U.S.C. § 3553(a)**

*It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.*

   United States v. Koon, 518 U.S. 81, 113 (1996)

This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for Mr. GONZALEZ by addressing each of the available sentencing options under the provisions of 18 U.S.C. § 3553 (a) as now constitutionally required by the Supreme Court. This memorandum will supplement the PSR and submit reasons why this Court should consider and grant a sentence that is below or "in variance" with the advisory Guideline level based on **numerous factors in mitigation.**

In the post United States v. Booker 543 U.S. __, 125 S. Ct. 738 (2005) and Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004) world this Honorable Court is free to look at

1

**all** the factors of 18 U.S.C. § 3553(a) in imposing a "reasonable sentence" that is "sufficient, but not greater than necessary to comply with the purposes set forth [ in this provision]." While § 3553(a)(4) requires the Court to consider the Guideline ranges, "it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Booker,* Breyer, J. 125 S.Ct. at 757.

Of particular note, Justice Kennedy, in his 2003 speech to the American Bar Association openly commented on the unfair severity of federal sentences and the harmful effects that the rigid application of the Sentencing Guidelines had on individuals and society as well as the Guidelines readily apparent failure:

"Our resources are misspent, our punishments too severe, our sentences too long....In the federal system the sentencing guidelines are responsible in part for the increase in prison terms....The Federal Sentencing Guidelines should be revised downward..."

In the instant case, Mr. GONZALEZ stands before this Honorable Court ready to be sentenced for his participation in a small time street level conspiracy involving the distribution of cocaine and crack cocaine. Mr. GONZALEZ was only directly, or singularly, involved in two sales as a "broker" or "go between" for the cooperating witness buyer and the supplier. He was not directly involved with the distribution of cocaine base; only powder cocaine, but was aware of the purpose of cooking a certain amount of the cocaine into crack cocaine.

The total amount that Mr. GONZALEZ can be held responsible for is 14.25 grams of (crack) cocaine. PSR ¶ 59.  The mandatory minimum is five years. PSR ¶ 89.

This Honorable Court is, therefore, free to look at disparity in sentences between crack and powder cocaine as well as numerous other factors in mitigation.  See e.g. United States v. Castillo, 2005 U.S. Dist. LEXIS 9780 (S.D.N.Y.); United States v. Smith, 359 F. Supp. 2d 771 (E.D. Wi. 2005); United States v. Leroy, 2005 U.S. Dist. LEXIS 12653 (E.D. Wi. 2005); United States v. Beamon, 2005 U.S. Dist. LEXIS 12689 (E.D. Wi. 2005), 2005 U.S. Dist. LEXIS 12689 (E.D. Wi. 2005); Simon v. United States, 361 F. Supp. 2d 35 (E.D.N.Y. 2005)(applying 20-1 ratio).  While crack/powder cocaine sentencing disparity has been found to be not unconstitutional as enacted, there is little question that it is selectively enforced against African-American offenders.  It is also true that crack cocaine prosecutions in federal court disproportionately impact African Americans causing one judge to call the racial disparity "appalling."  See United States v. Dumas, 64 F.3d 1427, 1431-32 (9th Cir. 1995); United States v. Armstrong, 48 F.3d 1508 n.1 (9th Cir. 1995).

Even the United States Sentencing Commission's Fifteen Year Report on federal sentencing recognized the continued disparate treatment of minority offenders based on the cocaine laws:

> A significant amount of the gap between Black and other offenders can, however, be attributed to the adverse impact of current cocaine sentencing laws. In addition, other changes in sentencing policies over the past fifteen years, particularly the harsher

> treatment of drug trafficking, firearm, and repeat offenses, have widened the gap among demographic groups. Whether these new policies contribute to crime control or to fair and proportionate sentencing sufficiently to outweigh their adverse impact on minority groups should be carefully considered by policymaker....
>
> Concern over possible racial or ethnic discrimination in federal sentencing remains strong today, fifteen years after implementation of guidelines designed to eliminate it

Without the Guidelines being mandatory this Honorable Court is free to look at comparative sentences and many traditional factors in mitigation that would help in imposing a just and fair sentence that is non-discriminatory.  If a 20-1 ratio of crack to powder cocaine was utilized in the present case rather than the well criticized 100-1 ratio than 1 gram of crack would equal 5 kg of marijuana.  The total drug equivalency for which Mr. GONZALEZ would be held responsible is 63.38 kg of marijuana (2.88 kg for cocaine plus 60.5 for crack) resulting in an Offense Level of **22** (60-80 kg of marijuana).  Compare PSR ¶s 38-39.  Taking into account acceptance of responsibility, the total Offense Level, absent any other reduction, would be **19** and the imprisonment range would be **46 to 57 months** for a Category IV offender.  Mr. GONZALEZ, however, is mindful of the statutory five year mandatory minimum.

**FACTORS IN MITIGATION**

As an alternative to the above calculations, Mr. GONZALEZ respectfully submits that this Honorable Court could take into consideration the following additional 3553(a) factors in mitigation:

**The history and characteristics of the defendant**

As set forth in the PSR ¶s 58-82 Mr. GONZALEZ has had a difficult life.  He was born with heart and other physical defects that required numerous hospitalizations as a child.  Growing up he, along with his mother, suffered extreme physical abuse from his mother's boyfriend.  He dropped out of school in the 9th grade and fell into a hole of degradation filled with drug and alcohol abuse.   Although he has been able to get his GED he has no vocational skills and he will no longer be eligible for disability payments, PSR ¶ 105, despite his physical limitations.  He further has never had the benefit of any drug treatment, PSR ¶ 81.

**Minor or peripheral Role**  Angel GONZALES was a "go between," or broker, for the CW and the suppliers.  He was **not a supplier** himself but would search out suppliers and "cookers," all on behalf of the CW.  Of note is that Angel GONZALES was only able to acquire for the benefit of the CW powder cocaine which was eventually cooked up by his co defendant. He is, therefore, clearly  **less culpable** than the other persons involved in the criminal activity.

5

**Overstatement of Criminal History**   While the eight Guideline criminal history points are correctly added by Probation, two of the points were for marijuana possession, and three are added for committing the instant offense after being paroled from the state on January 27, 2003.  The Court, in evaluating the applicability of the guidelines to the instant offense, may wish to consider whether there is an "overstatement" of criminal history pursuant to U.S.S.G. § 4A1.3 and whether he should be placed a Category III rather than Category IV.  Of further note is that Mr. GONZALEZ's prior offenses evidence how his history of substance abuse kept him from making rational choices.

**Disparity** with similar defendants with similar culpability.  In addition to comparing Mr. GONZALEZ's conduct with that of his co-defendant and related defendants, the Court should consider the "need to avoid unwarranted sentence disparities among defendants with *similar* records who have been found guilty of *similar* conduct." 18 U.S.C. § 3553(a)(6) *emphasis added.*   As set forth above there is little question that the racial and ethnic disparity that results from crack vs powder cocaine prosecutions is an unwarranted disparity of *similar* offenders that can only be cured with judicial intervention. In addition to those cases cited above from New York and Wisconsin, recently, in  United States v. Auter, D.C. R.I., Dkt.# CR 04-90T,  Judge Torres addressed the disparity issue in a crack cocaine case and ruled that a 20:1 (powder v. crack) ratio was

6

more "fair" and appropriate based on the Sentencing Commission's 2002 recommendation to Congress.

Lastly, Mr. GONZALES respectfully submits that even if any one of the above reasons do not provide a sufficient ground for the sentence requested here, **the totality of circumstances** justify the "reasonable sentence" requested. Cf. United States v. Iaconetti, 59 F. Supp. 2d 139 (D.C. Mass 1999).

### RECOMMENDED SENTENCE

Mr. GONZALEZ, has now spent approximately **16 and a half months actual time** in custody pending these proceedings. A sentence to the mandatory minimum term of **60 months and four years of supervised release, with a recommendation to the BOP's 500 hour drug treatment program**, would be a sentence that is sufficient but no more than necessary to carry out the provisions of 18 U.S.C. § 3553(a). Such a sentence would avoid disparity, reflect the seriousness of the offense and provide Mr. GONZALEZ with needed treatment and rehabilitation. It is also a "reasonable sentence" well within the discretion of this Honorable Court.

Date: July 12, 2005          Respectfully submitted,

                             ANGEL GONZALEZ,
                             By his attorney,

                             *s/Michael C. Bourbeau*
                             Michael C. Bourbeau (BBO #545908)
                             Bourbeau and Bonilla
                             77 Central St, 2nd Floor
                             Boston, MA 02109
                             (617) 350-6565